## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

**UNITED STATES SECURITIES
AND EXCHANGE COMMISSION,**

        **Plaintiff,**

    **v.**

**STEVEN F. MUNTIN,**

       **Defendant.**

_____/

**Case No.  21-cv-12607**
**Hon.**

**Jury Trial Demanded**

### COMPLAINT

Plaintiff United States Securities and Exchange Commission ("the SEC") alleges as follows:

### SUMMARY

1.    Between January 2016 and February 2020, Defendant Steven F. Muntin misappropriated over $305,000 from one of his elderly, investment advisory clients ("Client A") and overcharged this client at least $9,000 in assets under management ("AUM") fees.

2.    During the relevant time period, Muntin worked as an investment adviser representative at an SEC-registered investment adviser ("Adviser A") located in Flint, Michigan.  Muntin also managed certain investments for his advisory clients, including Client A, outside of Adviser

A, through his company, Executive Asset Management, Inc., which had previously been registered as an investment adviser with the state of Michigan, and before that, with the SEC.

3.      Starting in 2016, Muntin began soliciting Client A to write checks to Executive Asset Management for purported investments in securities.  Muntin told Client A that he would invest Client A's money in securities.  From March 2016 to February 2020, Client A wrote checks totaling $305,750 to Executive Asset Management for investment in securities.  However, Muntin did not invest any of the money, and, shortly after receiving each of the checks, spent all of Client A's money for his own benefit, including for payments towards Muntin's real estate taxes, health insurance, boat loan, car loan, and credit card bills.

4.      From at least January 2016 through February 2020, Muntin also overcharged Client A at least $9,000 in AUM fees that exceeded the amounts Client A owed him based on the advisory fee schedule set forth in Client A's advisory agreement with Executive Asset Management.

5.      By engaging in the conduct alleged in this Complaint, Muntin violated Section 17(a) of the Securities Act of 1933 ( "Securities Act") [15 U.S.C. § 77q(a)], Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78j(b)], and Rule 10b-5 [17 C.F.R. §

240.10b-5] thereunder, and Sections 206(1) and 206(2) of the Investment Advisers Act of 1940 ("Advisers Act") [15 U.S.C. §§ 80b-6(1) and 80b-6(2)].

6.      The SEC seeks a permanent injunction against Muntin to prohibit him from future violations of the federal securities laws, disgorgement of his ill-gotten gains, prejudgment interest, and civil penalties.

<u>JURISDICTION AND VENUE</u>

7.      This Court has jurisdiction over this action pursuant to Sections 20 and 22 of the Securities Act [15 U.S.C. §§ 77t and 77v], Sections 21 and 27 of the Exchange Act [15 U.S.C. §§ 78u and 78aa], and Sections 209 and 214 of the Advisers Act [15 U.S.C.  §§ 80b-9 and 80b-14].  Muntin, directly or indirectly, has made use of the means or instruments of transportation or communication in interstate commerce, or the means or instrumentalities of interstate commerce, or of the mails, or of any facility of any national securities exchange in connection with the acts, practices and courses of business alleged in this Complaint.

8.      Venue is proper in this Court pursuant to Section 22 of the Securities Act [15 U.S.C. § 77v], Section 27 of the Exchange Act [15 U.S.C. § 78aa], and Section 214 of the Advisers Act [15 U.S.C. § 80b-14] because

certain of the acts, transactions, practices, and courses of business constituting the violations alleged in this Complaint occurred within this district.  In addition, Muntin resided and transacted business within this district.

DEFENDANT

9.    Steven F. Muntin, age 57, is a resident of Fenton, Michigan. He was an investment adviser representative of Adviser A from December 2015 until his termination in February 2020.  From 1992 through February 2020, he was also the owner of Executive Asset Management, Inc., an investment adviser with approximately $26 million in assets under management that was registered as an investment adviser with the SEC from 2002 until October 2012 and with the state of Michigan from October 2012 through 2014.  During the relevant period, Muntin held a Financial Industry Regulatory Authority ("FINRA") Series 65 license.

**FACTS**

10.    Muntin began his career in the securities industry in 1992 as the sole owner and operator of Executive Asset Management, an investment adviser and financial planning company that was registered with the SEC as an investment adviser from 2002 until October 2012 and with the state of Michigan from October 2012 to December 2014.

4

11.    Muntin allowed Executive Asset Management's investment adviser registration to lapse at the end of 2014 and, in early 2015, Muntin transferred the bulk of his investment advisory clients' accounts to Adviser A in exchange for a job as an investment adviser representative.  As part of his employment agreement with Adviser A, Muntin received 85% to 96% of the AUM fees that Muntin's advisory clients, including Client A, paid to Adviser A.

12.    From December 2015 to February 2020, Muntin was employed by Adviser A as the investment adviser representative for approximately 50 clients located primarily in eastern Michigan.  Among other things, Muntin recommended that his clients invest in securities such as mutual funds, stocks and bonds.

13.    Unbeknownst to Adviser A, Muntin also continued to advise some of his clients, including Client A, with regard to certain of their assets, including both insurance and securities products that he did not transfer to Adviser A.  Muntin charged these clients additional AUM fees for advising them on these assets and requested that they pay the fees to Executive Asset Management pursuant to the investment advisory agreements that they had executed with Executive Asset Management prior to moving their accounts to Adviser A.

5

14.     Muntin did not inform Adviser A that he was continuing to advise his clients and charge them AUM fees outside of Adviser A.  In fact, on multiple occasions, Muntin misrepresented to Adviser A that he was not engaging in any outside business with his advisory clients.

15.     Starting in approximately March 2016, Muntin began requesting that Client A, an elderly widow and longtime client of Muntin's, write checks to Executive Asset Management for investments in securities outside of Adviser A.

16.     Between approximately March 2016 and February 2020, Client A gave Muntin checks totaling $305,750 for these investments.

17.     Muntin told Client A that he would invest the money in stocks, bonds, or other securities that would generate a return for Client A's grandchildren.  However, Muntin did not invest any of Client A's money in securities.  Instead, Muntin used Client A's money to pay his personal expenses such as making payments for his personal real estate taxes, health insurance, boat loan, car loan, and credit card bills.

18.     Client A never authorized Muntin to use any of Client A's money for his own benefit.

19.     In addition, from January 2016 through February 2020, Muntin overcharged Client A at least $9,000 in AUM fees that exceeded what Client

A owed Muntin for the assets that he managed on Client A's behalf.  Muntin

provided Client A with invoices that listed the total quarterly AUM fees due

for his management of Client A's assets outside of Adviser A.  However the

fees on the invoices exceeded the fee amounts that were owed based on the

advisory fee schedule specified in Client A's advisory agreement with

Muntin by more than $9,000.

20.     Client A paid the fees indicated on the invoices with checks

written to Executive Asset Management and was unaware that the fees

exceeded the amounts specified in the advisory agreement.

21.     In February 2020, Adviser A terminated Muntin's employment

as an investment adviser representative with the firm after Adviser A

received a complaint about Muntin's outside business activity from another

of Muntin's advisory clients.

<u>COUNT I</u>

**Violations of Section 17(a) of the Securities Act**
**[15 U.S.C. § 77q(a)]**

22.     The SEC realleges and incorporates by reference paragraphs 1

through 21.

23.     Muntin, knowingly or recklessly, or with respect to subparts b

and c below, knowingly, recklessly, or negligently, in the offer or sale of

securities, by the use of the means and instruments of transportation or

communication in interstate commerce or by use of the mails, directly or indirectly:

(a) employed devices, schemes and artifices to defraud;

(b) obtained money and property by means of untrue statements of material fact and by omitting to state material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading; and

(c) engaged in transactions, practices, and courses of business which operated or would operate as a fraud or deceit upon the purchasers of such securities.

24.     By engaging in the conduct described above, Muntin violated, and unless restrained and enjoined will continue to violate, Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)].

## COUNT II

**Violations of Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5]**

25.     The SEC realleges and incorporates by reference paragraphs 1 through 21.

26.     Muntin, knowingly or recklessly, in connection with the purchase or sale of securities, by the use of the means or instrumentalities of

interstate commerce, or of the mails, or of any facility of any national

securities exchange, directly or indirectly:

(a) used or employed devices, schemes and artifices to defraud;

(b) made untrue statements of material fact or omitted to state material

facts necessary in order to make the statements made, in the light of

the circumstances under which they were made, not misleading; and

(c) engaged in acts, practices and courses of business which operated

or would operate as a fraud or deceit upon any person in connection

with the purchase or sale of any security.

27.    By engaging in the conduct described above, Muntin violated,

and unless restrained or enjoined will continue to violate, Section 10(b) of

the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R.

§ 240.10b-5].

<u>COUNT III</u>

**Violations of Sections 206(1) and 206(2) of the Advisers Act**
**[15 U.S.C. §§ 80b-6(1) and 80b-6(2)]**

28.    The SEC realleges and incorporates by reference paragraphs 1

through 21.

29.    Muntin, while acting as an investment adviser, by use of the

mails, or any means or instrumentality of interstate commerce, directly or

indirectly, knowingly, willfully or recklessly:  (i) employed devices,

9

schemes, and artifices to defraud a client or prospective client; and (ii)

engaged in transactions, practices or courses of business which operated as a

fraud or deceit upon a client or prospective client.

30.    By engaging in the conduct described above, Muntin violated

Sections 206(1) and 206(2) of the Advisers Act [15 U.S.C. §§ 80b-6(1) and

80b-6(2)].

## RELIEF REQUESTED

WHEREFORE, the SEC respectfully requests that this Court:

### I.

Find that Defendant Muntin committed the violations alleged herein.

### II.

Permanently restrain and enjoin Defendant Muntin from, directly or

indirectly, violating Sections 17(a)(1), 17(a)(2), and 17(a)(3) of the

Securities Act [15 U.S.C. §§§ 77q(a)(1), 77q(a)(2), and77q(a)(3)], Section

10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 [17 CFR §

240.10b-5] thereunder, and Sections 206(1) and 206(2) of the Advisers Act

[15 U.S.C. §§ 80b-6(1) and 80b-6(2)].

### III.

Order Defendant Muntin to disgorge all ill-gotten gains and/or unjust enrichment received directly or indirectly, with pre-judgment interest thereon, as a result of the alleged violations, pursuant to Exchange Act Sections 21(d)(5) and 21(d)(7) [15 U.S.C. §§ 78u(d)(5) and 78u(d)(7)];

### IV.

Order Defendant Muntin to pay civil penalties pursuant to Section 20 of the Securities Act [15 U.S.C. § 77t], Section 21 of the Exchange Act [15 U.S.C. § 78u], and Section 209(e) of the Advisers Act [15 U.S.C. § 80b-9(e)].

### V.

Retain jurisdiction of this action in accordance with the principles of equity and the Federal Rules of Civil Procedure in order to implement and carry out the terms of all orders and decrees that may be entered or to entertain any suitable application or motion for additional relief within the Court's jurisdiction.

### VI.

Grant orders for such other relief as the Court deems appropriate.

# JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, the SEC

hereby requests a trial by jury.

Dated:  November 5, 2021        Respectfully Submitted,

**UNITED STATES SECURITIES
AND EXCHANGE COMMISSION**

/s/Daniel J. Hayes
Daniel J. Hayes, Illinois Bar No. 6243089
James A. Davidson, Illinois Bar No. 6206786
Anne C. McKinley, Illinois Bar No. 6270252

U.S. Securities and Exchange Commission
Chicago Regional Office
175 West Jackson Blvd., Suite 1450
Chicago, Illinois 60604
(312) 353-7390
(312) 353-7398 (facsimile)
HayesDJ@sec.gov
DavidsonJ@sec.gov
MckinleyA@sec.gov

Saima S. Mohsin, Acting United States Attorney
Peter A. Caplan, Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, MI 48226
(313) 226-9784
P-30643
Peter.Caplan@usdoj.gov

*Attorneys for Plaintiff*